## Macauley *v.* Teller.

*Landlord and tenant—Replevin—Taking of judgment note for rent.*

In an action of replevin where the plaintiff claims that a judgment note given to the defendants was a payment of the rent in arrear, but from the terms of an affidavit made by the plaintiff at the time the note was given there is ground for supposing that the note was to constitute a payment only if the facts stated in the affidavit proved to be true, the court errs in withdrawing the case from the jury and preventing the defendants from showing that the judgment note was taken tentatively until the representations as to title and incumbrances respecting the land to be bound by the judgment should be verified by examination, and that on the representations proving to be erroneous, the defendants asserted their right to proceed for the rent irrespective of the judgment note.

Argued Oct. 18, 1900. Appeal, No. 164, Oct. T., 1900, by defendants, from judgment of C. P. No. 2, Phila. Co., March T., 1899, No. 666, on verdict for defendants in case of James Macauley and Elizabeth Macauley v. Benjamin F. Teller and Joseph R. Teller, trading as Benjamin F. Teller & Brother, Landlords, and Jacob V. Raymond, Bailiff. Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Reversed.

Replevin for goods alleged to have been distrained when no rent was due. Before Sulzberger, J.

Plaintiffs claimed that on March 15, 1899, defendants accepted from James Macauley a judgment note for $200 which operated in law as a payment of the rent then in arrear. Defendants maintained that this judgment note was to be taken as a payment only in case the representations made by Macauley in an affidavit dated the same day as the note, should prove to be true. This affidavit was as follows:

" Personally appeared before me James Macauley who did affirm and say that he is the absolute owner of premises No. 2613 Franklin street; that he acquired title by deed dated June 1, 1895, recorded in deed book J. J. C., No. 55, page 539, etc.; that the said premises are clear of all incumbrances and claims of every kind whatsoever excepting a mortgage of $2,300 reduced to $1,700; that the interest on said mortgage is paid to June 1, 1898; that the taxes are paid to 1897, inclusive and the water rent to 1898, inclusive; that there are no judgments of any kind whatsoever against this affirmant; that the object in making this affidavit is to secure the sum of $200 on this affirmant's judgment note of this date, repayable in monthly instalments of $20.00 each with interest at six per cent per annum; that this affirmant agrees to pay Benj. F. Teller & Brother the sum of $12.50 for services rendered and costs incurred in securing said sum, and agree to pay also for the government stamps required, and hereby further agree that the said judgment shall remain a lien on the premises for the amount charged for services and costs above mentioned, in case the above affidavit is not true in every particular."

When Benjamin F. Teller, one of the defendants, was on the stand, Mr. Rich made this offer : I offer to prove by the witness, Benjamin F. Teller, that he is one of the landlords of the defendants; that on March 7, 1899, they distrained for the rent then due for February and March, amounting to $250, with costs; that after that distress was made, the tenants came to him and requested him to lift the distress, and remove the watchman, in consideration of the husband giving him a judgment note which would bind certain real estate that he owned in the city, and be a security for the rent. Messrs. Teller & Brother agreed to accept this note, if his statement as to the amount of incumbrance against this property proved to be correct, which statement was in writing, and is the paper offered in evidence, dated March 15, 1899. In this paper he stated that the property was clear of all incumbrance and claims of every kind whatsoever, excepting a mortgage of $2,300, reduced to $1,700. On the faith of that statement, the witness accepted from him the judgment note which has been offered in evidence, and entered it up and withdrew the watchman and raised the levy. On examination of the record, made within a few days after-

wards, for the purpose of verifying his statement, it disclosed
the fact that the mortgage on the property, instead of being
$1,700 was $1,750, and thereupon he sent for Mr. Macauley and
his wife and informed them of this fact, and that the statement,
on the faith of which they had taken the judgment note, was
untrue, or a mistake, and that, therefore, they would have to
proceed with their rights as landlords, disregarding the judg-
ment note.

Subsequently, when that instalment for the April rent fell
due, there was, after deducting all the payments made by Ma-
cauley and his wife, still a balance on account of the February
and March rent of $149.67, the costs of the first levy having
been entirely paid. The second distress was made for this bal-
ance of $149.67, plus $125, the April rent, making $274.67 in
all, the costs upon which of the constable amount to $23.10, in
addition, making $297.77 in all. The $65.00 which Mrs. Ma-
cauley testified she paid on April 4, and April 10, were handed
over to the constable, and were applied by him on account of
his costs first, and also on account of the general levy. As the
total costs on the second distress were $23.10, and applying
$65.00 on account of them, would leave $41.90 in excess to be
applied to the rent, the amount consisted of the balance of
$149.67 on the first levy and $125 on the second levy.

Objected to.

The Court: The relevancy and competency of this offer, as
a whole, in my judgment, depends on the validity of the in-
strument of writing of March 15. That, it appears to be prac-
tically agreed by the evidence of the plaintiff and by the offer
of the defendants, was a paper made when there was an actual
levy upon the property of the plaintiffs. The parties met and
agreed to get rid of the levy. They got rid of the levy by tak-
ing a judgment note from the plaintiff's husband, and before
the taking of that judgment note, the plaintiff's husband, in the
form of an affidavit, made a statement touching his property
intended to show and convince the defendants of his sufficiency
to answer for the judgment note that he was about to give.
But the paper was more than that. In it was incorporated an
agreement, in effect, that the proceeds of that judgment note
should be applied in extinguishment of the rent of February
and March, and that the sum so applied should be repaid to the

-defendants in monthly instalments of $20.00; so that, in effect, it constituted a legal extinguishment of the claim for February and March pro tanto, and was not at all in the nature of a promissory note given by a man for rent due, which has been held, and rightly held, to be merely collateral. That which is merely collateral is differentiated from this by the fact that when the terms are made by this instrument—the very body of the obligation is altered—these things cannot be collateral one with another, because their coexistence is inconsistent. A man cannot be held obligated to pay rent on March 1, and also be allowed to pay it at intervals of thirty days from March 15, in sums of $20.00. The two are not collateral; they are inconsistent, and the second can only be interpreted as a substitution for the first.

If that is so, the second offer looking to the rescission of that arrangement, in consequence of the error of the plaintiff's husband in stating the amount of the incumbrance upon the property, is relied upon, apparently, in the offer as a good ground for the restoration of the former right of the landlord to distrain.

I cannot view it in that light. There is no offer here to prove actual fraud, and while there is an offer to prove a mistake, where a mistake has been made by which one party has been worsted and the other benefited, before a man can in equity take advantage of such a mistake to claim a rescission he must abandon the advantage he gets by the mistake, and then only is he entitled to restitutio in integram; that is, he may be put where he was. But to say that he could employ the mistake made by the other side for his own advantage, and, nevertheless, claim a rescission of the contract on the ground of that very mistake, I think, is not allowable. Therefore I hold the offer insufficient as an answer to the plaintiff's claim, except in so far as to the amount of $23.10 (or something like that), being the costs on the levy for the April rent, which was made on April 15, a half month after the new rent accrued, and part of which new rent was still due and unpaid. That balance, therefore, is not within the benefit of the contract of March 15. So much I admit as relevant.

Mr. Rich: I except to your honor's ruling on the first offer, and make this additional offer:

I further offer to prove that there is due on the judgment

note that has been entered up—which judgment, by the way, is in the name of B. F. Teller, but is for Reed—costs amounting to, approximately, about $12.00 on the judgment that was entered up, which costs were paid by B. F. Teller & Brother, or, at least, they became liable in entering up the judgment note, and which costs have not yet been repaid to them by Macauley.

I offer, further, to prove that the defendants incurred expenses approximately amounting to $10.00 in making searches of the records, in taking judgment searches and matters of that kind, for the purpose of establishing the truth of the statement on which the judgment note was given, and that these costs have not yet been paid to them.

This offer is made for the purpose of showing, among other things, that it would be unjust and inequitable to require Messrs. Teller & Brother to have satisfied their judgment as a rescission of the contract, because of costs still being unpaid to them and the expenses incurred by them being still unpaid.

Mr. Goodbread : I object to the first offer, because the counsel has not stated what the expenses are and how they are made up.     I object to the second offer as to Mr. Teller's charges for searches.

The Court : I sustain both objections.

Exception noted for defendants.

The court charged as follows :

[In view of the ruling which you have heard me make as to the meaning of the contract of March 15, I charge you that the evidence offered by the defendants becomes practically unimportant in reaching a decision.     Because, although the defendants appear to have told Mrs. Macauley that they desired, after taking off the watchman, to keep up the levy, I do not think that may be interpreted so as to modify the effect of the delay in the payment of the rent granted by the terms of the written contract.] [1]

[In that view the evidence becomes important, and the only amount that the plaintiffs owe to the defendants is $69.72.     The form of the verdict will be given to you by counsel.     The value of the goods has been agreed upon by counsel, as $300, and the amount of the rent in arrear, $69.72.] [2]

Verdict and judgment for defendants for $69.72.     Defendants appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*George P. Rich,* with him *Henry C. Boyer,* for appellants.— Neither the taking of a note by a landlord from a tenant for the amount of rent due, nor the recovering judgment in an action upon a covenant to pay rent, will take away the right of distress for the same rent in arrear : Snyder v. Kunkleman, 3 P. & W. 487 ; Shetsline v. Keemle, 1 Ashmead, 29.

If the right to proceed with the distress for the February and March rent still remained, it follows that when the defendants came to distrain for the April rent, it was perfectly justifiable for them, under the circumstances of the case, and with a view of preventing the plaintiffs from being subjected to the double costs of two distresses, to abandon the first levy and proceed on the second levy for the whole rent due : Quinn v. Wallace, 6 Wharton, 452.

On the other hand, where there is no question of annoying or vexing the tenant, but where the landlord has either been induced by the tenant, or for the advantage of the tenant has been led to abandon the first distress and make a second, then no action would lie for thus distraining a second time : Wollaston v. Stafford, 80 E. C. L. R. 276.

But at all events the question of regularity or irregularity in thus making the second distress cannot be raised in this suit, as the bringing the action of replevin waives all irregularities in the conduct of the distress, the tenant if wronged thereby being remitted to his action of trespass or on the case, as may be : Smoyer v. Roth, 13 Atl. Repr. 191 ; Karns v. McKinney, 74 Pa. 387.

In a replevin for goods distrained for rent, the landlord, as defendant, may recover upon his avowry and cognizance for the rent actually due him, even although he prove less rent due than he distrained for : Barr v. Hughes, 44 Pa. 516 ; Phipps v. Boyd, 54 Pa. 342 ; Hessell v. Johnson, 142 Pa. 15.

*Joseph S. Goodbread,* for appellee.—The facts not being disputed, it became the duty of the court to determine the rights of the parties : Reed v. Harrison, 189 Pa. 614 ; Lonzer v, Lehigh Valley R. R. Co., 196 Pa. 610,

The case at bar is like that of Warren v. Forney, 13 S. & R. 52, where the court held that "if the landlord, to whom a share of the produce is reserved and due, substitute for it the promissory note of the tenant for a certain sum of money, he has no right to distrain for such money."

OPINION BY WILLIAM W. PORTER, J., January 22, 1901:

The plaintiffs owed the defendants for rent due February 1 and March 1, amounting to $250. Their goods were distrained upon. Pending the distress they paid the constable $60.00 on account, leaving a balance of rent and costs due of about $200. They then gave the defendants a judgment note for that amount, conditioned to pay $20.00 a month, representing by affidavit that it would bind the property of one of the plaintiffs, upon which there was an incumbrance of but $1,700. The defendants assert that discovering that the mortgage was $1,750 instead of $1,700, they notified the plaintiffs of the fact, and that it was then agreed that the watchman should be removed, but that the levy should remain until the rent was paid. Within a short time the April instalment of rent, amounting to $125, became due and was not paid. One of the plaintiffs paid to one of the defendants' clerks $50.00 on account, taking a receipt showing that it was received for the constable who was in charge of the levy still pending. In a few days a further payment of $15.00 was made and a similar receipt taken. The money was turned over to the constable. A few days thereafter the defendants withdrew the first levy and made a new distraint for the balance due on the rent for February and March (for which the first levy was made), after deducting the payments of $50.00 and $15.00, and for the instalment of rent accruing April 1.

It appears that the first monthly instalment of $20.00, due by the terms of the judgment note, was tendered to the defendants and that the money was left with them (no receipt being given), and that the second monthly payment was tendered but declined. The plaintiffs claim that the judgment note was given and accepted in payment of the rent then in arrear; that the payments of $50.00 and $15.00 were on account of the April rent, and not of the rent in arrear for which the first distraint was made, and that they are liable only for the balance of the rent of that month, amounting to $60.00 with some costs.

The learned court below held that the acceptance of the judgment note for $200 (in view of the terms of the affidavit of one of the plaintiffs executed contemporaneously therewith), operated in law as a payment of the rent then in arrear. The result of this view was the exclusion of testimony on behalf of the defendants, tending to show that the judgment note was taken tentatively until the representations as to title and incumbrances respecting the land to be bound by the judgment note should be verified by examination, and that on the representations proving to be erroneous, the defendants asserted their right to proceed for the rent, irrespective of the judgment note. This evidence being excluded, a verdict was directed based upon the assumption that the judgment note paid the rent then in arrear ; that the payments made thereafter were to be credited to rent accruing after the giving of the judgment note, and that the balance of that rent was the amount of rent due. If the judgment note was shown by the writing to have been accepted as payment, the learned judge was right in his view. But the affidavit made at the time of the giving of the note cannot be construed, as matter of law, to be conclusive of an intention to give and receive the judgment note as payment. The affidavit indicates that the note was taken subject to verification of the representations contained in the affidavit. This is shown by the provision that in case the representations should prove untrue, the judgment should stand for the costs. The inference would seem to be that if they should prove untrue, the judgment should stand for nothing else. The intention of the parties not being clear from the writing, proof of their acts and declarations was receivable. We are of opinion that the evidence offered should have been admitted, and that it, together with the other evidence in the case, should have been submitted to the jury under proper instructions, to the end that the jury might determine what the real intention of the parties was in respect to the giving and acceptance of the judgment note, that is, whether it was given and accepted as payment of the rent in arrear or not, and whether, if the judgment note was given and received as payment, the contract was subsequently rescinded by consent of the parties, on discovery of the misrepresentation as to the amount of the mortgage upon the property to be covered by the judgment. Upon the determina-

tion of these questions the application of the payments made, and the right to make, the second distraint for the amount claimed, will depend.

The judgment is reversed and a venire facias de novo is awarded.